# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0888

ROBERT A. HARTNESS, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    July 21, 2006    )

*Samuel M. Tumey*, of Liberty, Mississippi, was on the brief for the appellant.

*Tim S. McClain,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Mark M. McNabb*, all of Washington, D.C., were on the brief for the appellee.

Before LANCE, DAVIS, and SCHOELEN, *Judges*.

DAVIS, *Judge*: The appellant, Robert A. Hartness, appeals from the May 5, 2004, decision of the Board of Veterans' Appeals (Board or BVA) that, inter alia, denied his claim for a special monthly pension based on his status as permanently housebound. Both parties filed opening briefs and Mr. Hartness filed a reply brief. We will not consider Mr. Hartness' claim for special monthly pension based on the need for regular aid and attendance, because on appeal, he explicitly abandons this argument. *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997). His sole argument on appeal is that the Board erred when it denied entitlement to a special monthly pension based on his permanent housebound status. *See* 38 U.S.C. §§ 1513, 1521(e); 38 C.F.R. § 3.351(d) (2005). The Court concludes that the Board failed to apply section 1513 when considering whether Mr. Hartness was entitled to a special monthly pension under section 1521(e). For the reasons provided below, the Court will (1) reverse the May 2004 decision to the extent that it denied entitlement to special monthly pension under 38 U.S.C. § 1521(e); (2) remand the matter for the Board to (a) apply 38

U.S.C. § 1513 to Mr. Hartness' claim for a special monthly pension based on section 1521(e) and (b) remand for the Board to determine the amount of his income and his eligibility for non-service-connected disability pension.

## I. BACKGROUND

Mr. Hartness, a World War II veteran, served honorably in the U.S. Army from October 1940 to August 1945. Record (R.) at 14. The Court takes judicial notice of the fact that Mr. Hartness, who was born on December 18, 1920, is over 65 years old. R. at 14; *see Smith (Brady) v. Derwinski*, 1 Vet.App. 236, 238 (1991) ("Courts may take judicial notice of facts not subject to reasonable dispute." (citing FED. R. EVID. 201(b))). In a September 19, 2002, private medical report, Dr. James Fly indicated that Mr. Hartness was permanently and legally blind because of age-related macular degeneration of the retina. R. at 105. According to an April 2003 VA examination, Mr. Hartness was able to dress, feed, and bathe himself, ambulate for 100 yards, and mow his own lawn. R. at 139-40. The report also noted that he was unable to drive, but would leave the house once or twice weekly with assistance of others to attend church or go to the grocery store. *Id*. Subsequently, in an April 2003 decision, the Jackson, Mississippi, VA regional office (RO) granted Mr. Hartness a monthly pension based on his non-service-connected macular degeneration rated at 70% disabling and denied entitlement to a special monthly pension. R. at 132. The RO also noted that his pension would be terminated in February 2004 because his annual income exceeded the maximum amount allowed under 38 C.F.R. § 3.3(a)(3)(v) (2003). R. at 133.

In its 2004 decision on appeal, the Board denied entitlement to a special monthly pension for both aid and attendance and a pension at the housebound rate. R. at 10. In reaching its decision, the Board recognized Mr. Hartness' condition, rated at 70% disabling, and considered the results of the 2003 VA examination. R. at 9. The Board focused on the regulatory language in 38 C.F.R § 3.351(d), emphasizing that "[i]n the absence of at least one disability rated at 100 percent disabling, the provisions for special monthly pension at the housebound rate are not for consideration." *Id*. Therefore, the Board concluded that Mr. Hartness "cannot be deemed housebound as contemplated by VA law and regulation." R. at 9.

2

## II. CONTENTIONS ON APPEAL

On appeal, Mr. Hartness abandoned his claim for entitlement to a special monthly pension based on the need for regular aid and attendance. Appellant's Brief (Br.) at 1. Instead, he argues that based on the definition of "permanently housebound" as defined in 38 U.S.C. § 1502(c), he is entitled to a special monthly pension under 38 U.S.C. §§ 1513, 1521(e). He asserts that a plain language reading of section 1513(a), entitled "Veterans 65 years of age or older," excuses a veteran seeking a pension under 1521(e) from demonstrating a disability rated as permanent and total. Appellant's Br. at 5; Appellant's Reply Br. at 3-5. As a result, he argues that absent the requirement of total and permanent disability, he is entitled to special monthly compensation because he is permanently housebound. Appellant's Reply Br. at 4-5. In the alternative, he argues that the Board decision should be set aside and remanded to determine the circumstances under which Mr. Hartness could be considered permanently housebound. Appellant's Br. at 12; Appellant's Reply Br. at 6.

In response, the Secretary argues for affirmance of the Board decision. Secretary's Br. at 6. He notes that, because the veteran is capable of leaving his home without assistance, the veteran's condition does not conform with the statutory definition of "permanently housebound" under section 1502(c). Secretary's Br. at 5. Failing to address section 1513 in his brief, the Secretary submits that, as a matter of law, Mr. Hartness is not entitled to a special monthly pension because he does not have a disability that is rated as permanent and total, and alleges that, as a result, Mr. Hartness does not meet the threshold requirements of 38 C.F.R. § 3.351(d). *Id*.

## III. ANALYSIS

### A. Jurisdiction

At the outset, we note that Mr. Hartness argues, for the first time here, that the plain language of 38 U.S.C. § 1513 entitles him to a special monthly pension because he is permanently housebound. Although on appeal this Court "may hear legal arguments raised for the first time with regard to a claim that is properly before the [C]ourt, it is not compelled to do so in every instance." *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). When this Court entertains an argument raised on appeal for the first time, it considers whether the appellant has exhausted administrative remedies. The doctrine of exhaustion of

administrative remedies is a case-specific determination dependent on whether the interests of the individual weigh heavily against the interests to protect administrative authority and promote judicial efficiency. *McCormick v. Gober*, 14 Vet.App. 39, 44 (2000). Here, consideration of Mr. Hartness' argument is of interest to the Court because we have not previously had opportunity to address section 1513 or its interplay with section 1521. Accordingly, we will consider appellant's argument. *See* 38 U.S.C. § 7261(1).

### B.  Law

Chapter 15 of title 38, U.S. Code, governs the administration of pension for non-service-connected disabilities. In the instant appeal, we focus on the interplay between 38 U.S.C. §§ 1513 and 1521 when considering whether Mr. Hartness is entitled to a special monthly pension because he is permanently housebound. Section 1513, "Veterans 65 years of age and older," provides:

> (a) The Secretary shall pay to each veteran for a period of war who is 65 years of age or older and who meets the service requirements of section 1521 of this title (as prescribed in subsection (j) of that section) pension at the rates prescribed by 1521 of this title and under the conditions (other than the permanent and total disability requirement) applicable to pension paid under that section.

38 U.S.C. § 1513(a); *see* 38 C.F.R. § 3.3(a)(3)(vi). Section 1521 provides, in pertinent part:

> (a)  The Secretary shall pay to each veteran of a period of war who meets the service requirements of this section (as prescribed in subsection (j) of this section) and who is permanently and totally disabled from non-service-connected disability not the result of the veteran's willful misconduct, pension at the rate prescribed by this section, as increased from time to time under section 5312 of this title.
> . . . .
> (e) If the veteran has a disability rated as permanent and total and (1) has additional disability or disabilities independently ratable at 60 per centum or more, or (2) by reason of a disability or disabilities, is permanently housebound but does not qualify for a pension at the aid and attendance rate provided by [38 U.S.C. § 1521(d)], the annual rate of pension payable to the veteran under [38 U.S.C. § 1521(b)] shall be $4,340 and the annual rate of pension payable to the veteran under [38 U.S.C. § 1521(c)] shall be $5,441.

38 U.S.C. § 1521(a), (e).

C. Board Application of 38 U.S.C. §§ 1513, 1521

Without considering section 1513, the Board applied section 1521(e) and 38 C.F.R. § 3.351(d)(2), concluding that, without a disability rated as total or permanent, "the provisions for special monthly pension at the housebound rate are not for consideration." R. at 9. Mr. Hartness argues that the Board erred because it failed to apply section 1513 when considering whether he is entitled to a special monthly pension under section 1521(e). We agree. The Board's analysis and finding that Mr. Hartness was not entitled to a special monthly pension based on permanent housebound status, without consideration of section 1513, is clearly erroneous. *See* 38 U.S.C. § 7104(a), (d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (recognizing "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed"). On remand, the Board will apply the following interpretation of section 1513 and consider Mr. Hartness' eligibility for a special monthly pension consistent with the provisions of section 1521(e).

D. Statutory Construction of 38 U.S.C. § 1513

The Court interprets a statute de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). As in all matters involving statutory interpretation, we begin our analysis with an examination of the statutory language. *See Howe v. Smith*, 452 U.S. 473, 480 (1981); *Reiter v. Sonotone Corp.*, 422 U.S. 330, 337 (1979). "We assume 'that the legislative purpose is expressed by the ordinary meaning of the words used,'" *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962)), and "follow the cardinal rule that a statute is to be read as a whole . . . since the meaning of statutory language, plain or not, depends on the context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (citing *Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 25 (1988)). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108 (1980). "Where a statute's language is plain, and its meaning clear, no room exists for statutory construction. There is nothing to construe." *Gardner v. Derwinski*, 1 Vet.App. 584, 587-88 (1991) (citing *Lewis v. United States*, 92 U.S. 618 (1876)), *aff'd sub nom.*, *Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994); *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of

5

Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). In addition, generally, where a veterans benefits statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor." *Gardner*, 513 U.S. at 118; *see Allen (Alfred) v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc).

The plain language of 38 U.S.C. § 1513(a) requires that the Secretary pay a veteran who is 65 years of age or older and who meets the service requirements of section 1521 "pension at the rates prescribed by 1521 of this title and under the conditions (*other than the permanent and total disability requirement*) applicable to pension paid under that section." 38 U.S.C. § 1513(a) (emphasis added). As a result, if the veteran is 65 or older and conforms to the service requirements of section 1521, the requirement under section 1521 that a veteran be permanently and totally disabled or have a disability rated as permanent and total is excluded.[1]

This interpretation is consistent with the legislative history of sections 1513 and 1521, requiring that a veteran demonstrate permanent and total disability or a disability rated as permanent and total for entitlement to non-service-connected pension benefits, except for veterans who are 65 or older so that "a pension will be provided to wartime veterans aged 65 and older without regard to disability." S. Res. 1088, 107th Cong., CONG. REC. 13,239 (2001) (enacted). Consistent with legislative intent, section 1513(b) provides that "[i]f a veteran is eligible for a pension under both this section and section 1521 of this title, pension shall be paid to the veteran only under section 1521 of this title." 38 U.S.C. § 1513(b). Therefore, considering section 1513 as a whole and based on a plain language reading, we conclude that a veteran who is 65 years of age or older, and who otherwise conforms to the service requirements of section 1521, is entitled to a pension at the rates and under the conditions, *other than permanent and total disability*, required by section 1521.

---

[1]Section 1521(e) was originally enacted in 1964 as part of a pension bill that introduced special pension provisions for non-service-connected pensions. Veterans' Pension Amendments of 1964, Pub. L. 88-664, 78 Stat. 1095. In 1967, for purposes of non-service-connected pension, Congress enacted a presumption of total and permanent disability for veterans aged 65 years of age or older. Veterans' Pension and Readjustment Assistance Act of 1967, Pub. L. 90-77, 81 Stat. 178. Congress repealed this presumption in 1990. Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, 104 Stat. 1388. When Congress enacted section 1513 in 2001, it awarded non-service-connected pension without regard to disability for veterans who are 65 years of age and older and who meet the service requirements of section 1521(j). Veterans Education and Benefits Expansion Act of 2001, Pub. L. 107-103, 115 Stat. 991.

## E. Interplay between 38 U.S.C. §§ 1513(a) and 1521

We first note that the Secretary's regulation entitled "Pension," implementing sections 1513 and 1521, fails to provide guidance on the interaction between the two statutory provisions. *See* 38 C.F.R. § 3.3(a)(3). In addition, the Secretary's interpretation of the special pension provisions under section 1521(e), contained in § 3.351(d), has not been amended since its promulgation in 1979 and thus does not consider the interpretive effects of section 1513(a), first enacted in 2001, as applied to section 1521(e). *See* 38 C.F.R. § 3.351(d); 44 Fed. Reg. 45,939 (1979). Therefore, we now consider the interplay between section 1513(a), as interpreted above, and section 1521, mindful that any ambiguity in interpretation must be resolved in the veteran's favor. *See Gardner*, 513 U.S. at 118. By express language in section 1513, the determination of whether a veteran is entitled to pension under the terms of section 1521 is conducted absent the condition that the veteran demonstrate permanent and total disability or that the veteran have a disability rated as permanent and total. The statute expressly excludes that requirement by language contained in the parentheses–"(other than the permanent and total disability requirement)." 38 U.S.C. § 1513(a). The total-and-permanent-disability requirement appears only in subsections (a) and (e) of section 1521. *See* 38 U.S.C. § 1521.[2] We hold that application of section 1513(a) results in the exclusion of the permanent-and-total-disability requirement in section 1521(a) and (e) when considering whether a veteran 65 years of age or older is entitled to non-service-connected disability pension.

As noted above, section 1521(a) focuses on the Secretary's obligation to pay a veteran a non-service-connected disability pension where the veteran meets threshold service requirements and is permanently and totally disabled. Similarly, the plain language of section 1521(e) provides for an increased pension rate for a veteran who has a disability rated as permanent and total

> [i]f the veteran *has a disability rated as permanent and total* and (1) has additional disability or disabilities independently ratable at 60 per centum or more, or (2) by reason of a disability or disabilities, is permanently housebound but does not qualify for pension at the aid and attendance rate. . . .

---

[2]We also note that in section 1521 Congress distinguishes between a veteran "who is permanently and totally disabled," 38 U.S.C. § 1521(a), and a veteran who has "a disability rated as permanent and total," 38 U.S.C. § 1521(e). However, because Congress did not make that distinction in the section 1513 statutory language excluding the permanent-and-total-disability requirement, here we apply section 1513 to section 1521(a) and (e).

38 U.S.C. § 1521(e) (emphasis added).[3]  Accordingly, when applying section 1513 to section 1521, under section 1521(e), as in section 1521(a), the condition that the veteran have a disability rated as permanent and total, is excluded.  The impact of this interpretation is that a wartime veteran is awarded a special monthly pension if, in addition to being at least 65 years old, he or she possesses a minimum disability rating of 60% or is considered permanently housebound as defined under 38 U.S.C. § 1502(c).  Thus, we hold that applying the plain language of section 1513(a) to section 1521, consistent with Congress' intent to provide a pension to veterans aged 65 years of age or older regardless of disability, results in the exclusion of the permanent and total disability requirement in sections 1521(a) and 1521(e).  On remand, the Board will apply our holding and consider Mr. Hartness' eligibility for a special monthly pension, pursuant to the provisions of section 1521(e).

### F.  Permanently Housebound

Mr. Hartness argues that based on the language of section 1513 he is entitled to the special pension provision of section 1521(e) because he is considered permanently housebound under 38 U.S.C. § 1502.  Based on the statutory definition of "permanently housebound," it must be determined that Mr. Hartness is "substantially confined to his or her dwelling and the immediate premises" to be considered permanently housebound according to statute and regulation.  38 U.S.C. § 1502(c); *see* 38 C.F.R. § 3.351(d)(2).  Absent a regulation by the Secretary defining the term "substantially confined," we conclude that the term may conceivably be more broadly construed to incorporate the facts considered here.  It is significant that "Congress intended to provide additional compensation for veterans who were unable to overcome their particular disabilities and leave the house in order *to earn an income* as opposed to an inability to leave the house *at all*."  *Cf. Howell v. Nicholson*, 19 Vet.App. 535, 540 (2006).  However, whether Mr. Hartness is substantially confined within the meaning of the statute is a determination to be made by the Board in the first instance.  We leave this matter for the Board's consideration on remand.

As to Mr. Hartness' condition, the Board concluded that he was not "substantially confined," noting a "capacity to walk approximately 100 yards. . . .  He left the house 1-2 times per week to go

---

[3] According to section 1502, title 38, U.S. Code, a veteran is considered "permanently housebound," when "the veteran is *substantially confined* to such veteran's house . . . or immediate premises due to a disability or disabilities which it is reasonably certain will remain throughout such veteran's lifetime."  38 U.S.C. § 1502(c) (emphasis added).

to the grocery store or church with the help of a friend." R. at 8. The Board further determined "the veteran is capable of leaving the home, and admits to being able to mow his lawn. Thus, he cannot be deemed 'housebound' as contemplated by VA law and regulation." R. at 9. On remand, the Board will reconsider the record on appeal in light of our holding and determine whether Mr. Hartness is entitled to a special monthly pension under section 1521(e) either (1) because of his existing non-service-connected disability rated at 70% disabling; or (2) because Mr. Hartness is substantially confined according to VA law and regulation so that he is considered permanently housebound according to sections 1502(c) and 1521(e).

### G. Eligibility for Non-Service-Connected Disability Pension

We also note that the record on appeal is ambiguous as to Mr. Hartness' eligibility for non-service-connected pension and special monthly pension under section 1521. According to an April 2003 award letter, the RO determined that Mr. Hartness' pension would be "terminated effective February 1, 2004, because [his] income exceeds the maximum amount allowed by law." R. at 133. VA specified that his "income effective February 1, 2004, is $14,072[]. The limit for a single veteran is $9,690[]." *Id*. In response, Mr. Hartness filed his April 2003 Notice of Disagreement, indicating that VA had miscalculated his Social Security income and that his actual income was $608 per month. R. at 137. The May 2003 Statement of the Case does not address this issue. On remand, VA will determine the amount of Mr. Hartness' income and his eligibility for non-service-connected disability pension. *See* 38 C.F.R. § 3.262(f) (2005) (evaluating income derived from Social Security benefits).

### IV. CONCLUSION

Upon consideration of the foregoing, the Court will (1) reverse the Board's decision to the extent it denied entitlement to a special monthly pension under section 1521(e); (2) remand for the Board to apply 38 U.S.C. § 1513, as interpreted herein, to Mr. Hartness' claim for a special monthly pension based on section 1521(e); and (3) remand for the Board to determine the amount of his income and his eligibility for a non-service-connected disability pension.

REVERSED IN PART and REMANDED.