KASOLD, Chief Judge,
with whom GREENE, Judge,
joins, dissenting:
Certainly, matters that are settled should remain settled unless there is very good reason to unsettle them. See Citizens United v. FEC, — U.S. -, 130 S.Ct. 876, 911-912, 175 L.Ed.2d 753 (2010) (“[Precedent is to be respected unless the most convincing of reasons demonstrates that adherence to it puts [the Court] on a course that is sure error.”); see also Arizona v. Rumsey, 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (“[A]ny departure from the doctrine of stare deci-sis demands special justification.”). Equally certain, however, when decisions are wrong and not settled, there is little to no reason to let them stand. See Payne v. Tenn., 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (“[WJhen governing decisions are unworkable or are badly reasoned, ‘this Court has never felt constrained to follow precedent.’ ” (quoting Smith v. Allwright, 321 U.S. 649, 665, 64 S.Ct. 757, 88 L.Ed. 987(1944))); see also Anastasoff v. United States, 223 F.3d 898, 905 (8th Cir.2000), vacated as moot on reh’g en banc, 235 F.3d 1054 (8th Cir.2000) (“[W]e are not here creating some rigid doctrine of eternal adherence to precedents. Cases can be overruled. Sometimes they should be ... If the reasoning of a case is exposed as faulty, or if other exigent circumstances justify it, precedents can be changed.”); Ribaudo v. Nicholson, 20 Vet.App. 552 554, n. 20 (2007) (en banc) (“[T]his Court, now sitting as a full court panel, is not bound by this Court’s prior decisions and is free to write on a clean slate.”).
*34 Succinctly stated, the Court erred in Hartness v. Nicholson, 20 Vet.App. 216 (2006), when it concluded that the enactment of 38 U.S.C. § 1513(a), which provides pension benefits for veterans aged 65 and over “at the rates prescribed by [38 U.S.C. § 1521] and under the conditions (other than the permanent and total disability requirement) applicable to pension paid under that section” (emphasis added), was intended by Congress to be anything other than a mechanism for our elderly veterans who are not permanently and totally disabled to meet the threshold requirement established in 38 U.S.C. § 1521(a) for receiving the pension benefits otherwise payable under 38 U.S.C. § 1521, with the specific amount of pension based on additional criteria provided in subsection (b) (unmarried or separated), (c) (married), (d) (in need of regular aid and attendance), (e) (a disability rated as permanent and total and additional disability rated at 60% or permanently housebound), or (f) (veteran spouses both eligible for pension).
Contrary to the majority’s suggestion, this is not a case where the language of the statute is ambiguous.[1] Congress’s choice of words is clear and its plain language is controlling. See Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (“We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.... When the words of a statute are unambiguous, then, this first canon is also the last: ‘judicial inquiry is complete.’ ” (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981))); Bradley v. Peake, 22 Vet.App. 280, 291 (2008) (“ ‘Congress expresses its intent through the language it chooses’ and that the choice of words in a statute is therefore deliberate and reflective.” (quoting Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1347 (Fed.Cir.2004)) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 433 n. 12, 436, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987))).
The phrase in section 1513(a), “other than the permanent and total disability requirement,” refers to the threshold requirement in section 1521(a) that a veteran be “permanently and totally disabled” to be eligible for any pension benefits under section 1521, and does not refer to the additional requirement in section 1521(e) that a veteran have “a disability rated as permanent and total” (emphasis added) to be considered for the compensation provided by that subsection. Section 1521(a) explicitly refers to veterans who are considered to be permanently and totally disabled, while section 1521(e) explicitly refers to veterans who have a disability rated as permanent and total. That the phrase “permanently and totally disabled” is different from “a disability rated as permanent and total” should not be questioned, as the law provides that a veteran can be permanently and totally disabled without having a disability rated as permanent and total; e.g., under 38 U.S.C. § 1502(a)(1), a patient in a nursing home for long-term care because of disability is considered “permanently and totally disabled.”
*35 The majority’s discussion of the quality of the reasoning provided in the Hartness decision ignores the fact that the Hartness decision addressed the significant difference in the language of section 1521(e) (requiring a disability rated as permanent and total), and the language of section 1513(a) and 1521(a) (addressing the permanent and total disability requirement or status), in a footnote, 20 Vet.App. at 221, n. 2., without the reasoned analysis that might withstand the scrutiny of a review by the en banc Court, see Citizens United, 130 S.Ct. at 911-12 (noting that a relevant factor in stare decisis is “whether the decision was well reasoned”) (quoting Montejo v. Louisiana, — U.S. -,-, 129 S.Ct. 2079, 2088-2089, 173 L.Ed.2d 955 (2009)). See also National Cable & Telecommunications Ass’n, Inc. v. Gulf Power Co., et al., 534 U.S. 327, 335, 122 S.Ct. 782, 151 L.Ed.2d 794 (2002) (rejecting conclusion, presented in a footnote without analysis, that had no foundation in the plain language of the statute); United States v. Sotelo, 436 U.S. 268, 283, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978) (Rehnquist, J., dissenting) (“Perhaps recognizing that this provision not only does not support its conclusion but seriously undermines it, the Court not surprisingly attempts to keep this provision in the background, addressing it only obliquely in a footnote ...”); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (declining to give stare decisis effect to judgments that had been issued without opinion-“summary affirmances” that did not “contain any substantive discussion” of the point at issue or any other point, id., at 670-671, 94 S.Ct. 1347); Ribaudo, supra.
Similarly, the majority’s suggestion that Hartness remains a workable decision is undercut by the very fact that in an effort to work around Hartness, the Secretary promulgated the VA Fast letter that is at the heart of this appeal, and that the majority has now stricken down.[2] The Hartness decision is unworkable because in equating the phrase in section 1521(e) with the phrases in section 1513(a) and 1521(a), Hartness gives no meaning to the plain language of the statute, with the end result being an unauthorized grant of additional pension benefits, at the expense of the taxpayer, to veterans not otherwise entitled to receive those benefits. See Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 432-33, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (no equitable considerations can create a right to payments out of the U.S. *36 Treasury that have not been provided for by Congress); Rhodan v. West, 12 Vet.App. 55, 57, 58 (1998) (Holdaway, J., concurring) (“[I]t must be remembered that the Secretary is not merely representing the departmental interests, he is, in a larger sense, representing the taxpayers of this country and defending the public fisc from the payment of unjustified claims.... There is a duty to ensure that, insofar as possible, only claims established within the law are paid. The public fisc and the taxpayer must be protected from unjustified claims.”).
The majority err today in concluding that the doctrine of stare decisis warrants retention of Hartness. None of the reasons for applying that doctrine apply here. The Hartness decision is wrongly decided, and the passage of time since Hartness was decided — four years — is hardly enough time to give it the weight of “antiquity.” Citizens United, supra (noting antiquity of a decision as a factor in applying stare decisis). And, the majority’s focus on the fact that Congress has not yet passed an amendment to rectify the error ignores the reality of passing legislation, and gives too little weight to the express concerns by the Senate that have not been expressly rebutted by the House; there simply is no basis to suggest that attempts to amend the statute have been rejected by Congress, as opposed to sidelined because of other major issues addressed in the past several years.
The doctrine of stare decisis is important to our jurisprudence, but when the en banc Court for the first time is reviewing a particular issue and also reviewing a panel decision that (1) is wrong, (2) has been in effect for only four years, (3) has caused a party (here, the Secretary) to attempt to work around it, (4) purports to authorize benefits not otherwise authorized by Congress, and (5) has resulted in Congress undertaking to pass legislation to overrule the decision by statute, stare decisis should not apply; or, at least the considerations of stare decisis should not outweigh overturning the erroneous panel decision by the en banc Court. Citizens United and Ribaudo, both supra. “In such circumstances, where a wrong turn has been taken, back is the shortest way forward.” United States v. Anderson, 885 F.2d 1248, 1255 (5th Cir.1989) (en banc).

. With regard to the suggestion of our colleague concurring with the majority that a statute must be ambiguous if two interpretations are proffered, this is only so when the two interpretations are equally reasonable or fair interpretations of the plain language used by Congress. Saying it is so does not make it so. Stolt-Nielsen S.A. v. AnimalFeeds International Corp., - U.S. -, 130 S.Ct. 1758, 1769, n. 7, 176 L.Ed.2d 605 (2010) ("Merely saying something is so does not make it so”). This is why panel decisions should be reviewed de novo. Ribaudo, supra.

. The Secretary’s Fast Letter is referenced because it demonstrates that the particular issues discussed in Hartness are not workable and not accepted by the parties (at least one of them) over time. The majority's suggestion that this reference somehow indicates support for the proposition that the Secretary might avoid application of our precedential case law is perplexing because any such indication is not fairly raised by the reference. Moreover, the Secretary's Fast Letter is an obvious attempt to comply with the holding in Hartness for claims involving facts identical to those in Hartness, but not for claims with some differentiating fact. Cf. Cohens v. Virginia, 6 Wheat. 264, 19 U.S. 264, 5 L.Ed. 257 (1821) (noting that language in a particular case is meant be viewed in the context of the case and should not be extended blindly in subsequent cases). As the majority notes, the Fast Letter has unreasonable distinctions and results. If Hartness Were correctly decided, the Fast Letter should be stricken. But the key issue to be taken from the Fast Letter is that Hartness is not workable or well-settled by time which, in the context of being wrongly decided, weighs against the application of stare decisis. Citizens United, supra (noting relevant factors for applying "stare decisis include [workability], the antiquity of the precedent, the reliance interests at stake, and whether the decision was well reasoned”). See also Nat’l Org. of Veterans’ Advocates, Inc. v. Sec’y of Veterans Affairs, 260 F.3d 1365, 1374 (Fed.Cir.2001) (noting that parties are not bound by decisions of a Court in subsequent cases if they plan to seek review of an issue in a higher court).